IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD L. MEANS,

    Petitioner,

v.

ROBERT HOREL, Warden,

    Respondent.

No. C 08-00827 CRB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Richard Lee Means seeks a writ of habeas corpus based on various grounds, including his trial counsel's repeated and inexplicable failure to object to highly incriminating hearsay testimony that the trial court had previously ruled was inadmissible. The state court's determination that such conduct was not ineffective assistance of counsel is contrary to, or an unreasonable application of, the clearly established federal law articulated in Strickland v. Washington, 466 U.S. 668 (1984). Accordingly, after carefully considering the parties' arguments and the entire record, the Court GRANTS the petition.

## I.  BACKGROUND AND PROCEDURAL HISTORY

This case stems from an April 25, 2005 shooting at an apartment complex where Petitioner lived with his family. Pet. Supp. Br. at 4. The victim, Damon Pearson, was at the complex attending a family party when he was shot. Id. at 5. When the police arrived at the scene following the shooting, bystanders told police that "Richard" or the person in

apartment 103, was the shooter. Id. at 6.

### A. The Motion in Limine

Prior to the commencement of trial, the State sought to admit the statements that the police officers heard when they arrived on the scene of the shooting. (RT 36-40). In particular, at the pretrial evidentiary hearing, Officer Wallace testified that after he arrived on the scene he was approached by an unidentified male who was on the verge of tears. (RT 48). The officer asked who had done the shooting, and the unidentified male responded with a description of the alleged shooter, the shooter's first name, and that the shooter had departed the scene in a brown '88 four-door Delta. (RT 47-49). The Officer did not get the unidentified male's name, and did not know whether he had personally witnessed the shooting. (RT 50).

Officer Latham testified that when he arrived at the scene, there were approximately 30 to 40 people standing outside Apartment 107. (RT 55). Other officers had already arrived on the scene and were tending to the victim. Id. Officer Latham overheard someone in the crowd "shout that the man who did this lived down there," pointing toward apartment 103 (where Petitioner lived). (RT 56). The officer also testified that later he learned through officer radio broadcasts that the shooter's name was Richard Means and that he lived in apartment 103. (RT 58).

Although the officers' statements of what they heard are hearsay, the State nonetheless sought to admit them under the "spontaneous declaration" exception to the hearsay rule. That rule provides:

> Evidence of a statement is not made inadmissible by the hearsay rule if the statement:
> (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and
> (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception.

Cal. Evid. Code § 1240.

The trial judge denied the State's motion, finding that the statements were inadmissible because, although the statements were made in the context of an exciting event, there was insufficient evidence that the declarants had personally "perceived" the shooting or

2

1  that they were "not simply repeating what somebody else had told him or her."  (RT 71-76).
2  The trial court excluded "any mention of either of these statements that these officers
3  overheard . . . unless and until the court rules that it's otherwise admissible."  (RT 75).

### B. The Trial Testimony

At the hospital shortly after the shooting, Pearson told the police that he had been shot by an unknown man when he tried to intervene in a domestic dispute.  (RT 363-64).  He even described the clothing allegedly worn by the man and the woman who were arguing, and stated that he had never before seen the man who had shot him. Id.  At trial, however, Pearson testified that it was Petitioner who had shot him, in the course of a fight about the volume of music at the party Pearson was attending.  (RT 199-211).  Pearson testified that Petitioner was someone he had "seen around" the apartment complex before, and that he knew his name was "Rich, Richard."  (RT 207).  There was no evidence of gunshot residue on Petitioner, no fingerprints or DNA, no confession or incriminating admissions.  No other eyewitnesses testified that Petitioner interacted with Pearson, let alone that Petitioner was the shooter.  Nonetheless, Pearson's trial testimony identifying Petitioner as the shooter was bolstered by the testimony of three police officers.

Despite the trial court's pretrial ruling that "any mention of" the bystander statements identifying Petitioner as the shooter was impermissible, at trial the State asked Officer Latham:

> Q   Did you hear any radio broadcasts concerning the identity of a possible shooter?
> A   Yes, I did.
> Q   What do you remember hearing?
> A   I remember hearing that the possible shooter in the incident was a suspect by the name of Richard.
> Q   Okay.  Do you recall if you heard any information broadcast over the police radio regarding the whereabouts of Richard?
> A   There was a broadcast made that an officer had received information that Richard had fled the scene in a brown vehicle.
> Q   Did you hear any information broadcast over your police radio regarding the residence or home address of this Richard?
> A   A broadcast was made with information saying that Richard lived in Apartment 103 at this location.

(RT 294-95).  Trial counsel lodged no objection, nor did he move to strike the inadmissible testimony.

3

1     The State elicited similar information from Officer Wallace:

2     Q    Do you recall any radio traffic regarding identity of possible shooters?
      A    Yes.
3     Q    What do you recall hearing?
      A    That there was a suspect vehicle –not so much specifics on the air as far as the
4          person, but the suspect vehicle being a brown Delta.

5  (RT 309). Again, trial counsel lodged no objection, nor did he move to strike the

6  inadmissible testimony.

7     Finally, in response to questions from the State, Officer Iriye testified that when he

8  arrived on the scene he began a search for an individual whose name "was given to me on the

9  scene." (RT 422). He testified further: "We were advised that he [the individual] was

10 possibly living in Apartment 103 at that same address. Id. This time, too, trial counsel

11 lodged no objection, nor did he move to strike the inadmissible testimony.

12    **C.    Closing Arguments and Jury Deliberations**

13    The State then specifically emphasized the hearsay testimony in its closing arguments.

14 The prosecution acknowledged that "the argument of identification" was "important" in the

15 case. (RT 432). The prosecution identified Pearson's credibility as a central issue,

16 acknowledging that the first version of events "was [that] someone else . . . possibly

17 committed these crimes." (RT 433). And the prosecution then tried to convince the jury that

18 Pearson's second version of events, which implicated Petitioner, was the truth, arguing that

19 "the version that [Pearson] gives in which the Defendant shot him . . . is supported by several

20 witnesses, supported by the police officers, supported by the Defendant's neighbors,

21 supported by the Defendant's friends who testified." (RT 433-35) (emphasis added). The

22 prosecution concluded: "It's an ID case. And the ID is very clear by the person who was

23 shot. It's also corroborated." (RT 451) (emphasis added).

24    The jury deliberated from February 27 at 3:25 pm until March 1 at 10:41 am. (RT

25 138, 188). During those deliberations, they requested a read-back of Pearson's testimony.

26 (RT 187). The jury then convicted Petitioner of attempted murder, assault and related

27 charges. (RT 497-99).

28 //

4

### D.     The New Trial Motion

After the verdict, Petitioner's mother wrote to the trial judge to complain about the performance of trial counsel.  (RT 535-38).  In particular, she reported that trial counsel only visited her son in jail after Petitioner wrote to the bar association to complain; when counsel did visit, he told Petitioner that he would lose and nothing he could say would help him.  Id.  The trial court appointed an attorney to determine if Petitioner had a colorable claim of ineffective assistance of counsel, and on May 2, 2006, after finding that such a colorable claim existed, the court appointed Petitioner new, substitute counsel to investigate a possible new trial motion based on ineffective assistance of counsel.  Id.  Substitute counsel made a motion for a new trial; however, counsel did so without ever requesting the trial transcripts.  Answer, Lodged Document 4, Opinion, Court of Appeal (Nov. 16, 2007) ("Opinion") at 36.  As a result, counsel's new trial motion did not address any of trial counsel's trial errors, including the failure to object to the hearsay testimony identifying Petitioner as the shooter.  Id. at 35-38.

The trial court held a hearing on the motion and the next day denied the motion in open court.  The trial court found that defense counsel failed to conduct an adequate investigation by not making any reasonable attempt to locate and interview potentially favorable witnesses.  (RT 669).  The court also concluded, however, that Petitioner did not raise the issue of self-defense with his counsel or otherwise until after he was convicted and thus defense counsel was not ineffective by failing to argue self-defense.  (RT 671).  Finally, the court found that Petitioner had not proved he had been prejudiced by his counsel's failure to conduct a reasonable investigation because, in light of the absence of any evidence that the missing witnesses would have testified in an exculpatory manner, there was not a reasonable probability that Petitioner would have obtained a more favorable result had an adequate investigation been conducted.  (RT 671-72).  The court then sentenced Petitioner to a term of 43 years to life in state prison.  (RT 677).

//

//

### E. The Appeal

Petitioner's appellate counsel made a claim based on ineffective assistance of counsel for failing to object to the hearsay testimony identifying Petitioner as the shooter. Answer, Lodged Document, Appellant's Opening Brief, Court of Appeal ("Appellant's Opening Brief") at 19-23. Appellant specifically argued:

> The Latham, Wallace, and Iriye testimony to prove the truth of the content therein constituted inadmissible and at times multiple levels of hearsay that met no exception to the hearsay rule and was no more than the prosecution's improper way of getting in admissible hearsay through the back door that it could not get in through the front.

Id. at 22. Thus, appellate counsel argued that it was ineffective for trial counsel to not object to this testimony on the ground that it was inadmissible hearsay. As an additional ground, counsel argued that the testimony was inadmissible because it violated Petitioner's Sixth Amendment rights under Crawford v. Washington, 541 U.S. 36 (2004). Id. at 23.

The Court of Appeal affirmed the conviction and denial of the motion for a new trial in a 43-page written opinion. See People v. Means, Case No. F050871, 2007 WL 3408469 (Cal. App. 5 Dist. 2007). In so doing, the court rejected Petitioner's ineffective assistance of counsel claim. While the court acknowledged that Petitioner was arguing that his trial counsel should have objected to the testimony on grounds of hearsay, prosecutorial misconduct, and Crawford error, id. at 18, it went on to address only the failure to object on the basis of Crawford error; the court did not discuss whether trial counsel's failure to object on hearsay grounds or prosecutorial misconduct was unreasonable, id. at 21. The court concluded that defense counsel could have reasonably concluded that Crawford did not apply because the statements were not testimonial. Id. at 22-24.

Petitioner filed a petition for review that included the hearsay issue, and which the California Supreme Court denied without comment. Lodged Document 6.

### F. This Habeas Petition

Petitioner timely filed the petition for habeas corpus presently pending before this Court. See dckt. no. 1. This Court subsequently appointed Petitioner counsel, and received additional briefing from the parties. See dckt. nos. 26, 33, 36, 39. In his habeas petition

6

before this Court, Petitioner specifically raised the issue of trial counsel's failure to object to the "explosive hearsay statement implicating Petitioner made by the non-witness unidentified third parties that were admitted into evidence through the testimony of police officers who were investigating the scene of the shooting." Dckt. no. 1 at 8.[1]

## II.    STANDARD OF REVIEW

Although Petitioner asks the Court to review the state court's decision de novo, see dckt. no. 33 at 21, the Court will not do so. It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for the purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced. Barker v. Fleming, 423 F.3d 1085, 1092 (9th Cir. 2005). It is not necessary that the decision on the merits be accompanied by a statement of the reasoning for § 2254(d) to be applied. Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011). The Court will therefore use "normal" AEDPA review, as requested by the government. See dckt. no. 36 at 3. This of course requires that the Court be "highly deferential" to the state court. See Woodford v. Visciotti, 537 U.S. 19, 24 (2002).

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that

---

[1] Petitioner also raises several additional bases upon which he seeks relief, including ineffective assistance for failing to request trial transcripts, for failing to impeach the victim "with his priors," and for failing to make "foundational objections to matters outside the expertise of the witness," as well as improper sentencing. As the Court grants the petition on the basis of trial counsel's failure to object to the hearsay statements, the Court does not reach the additional grounds raised in Petitioner's pro se petition (and not addressed in Petitioner's additional briefing once counsel was appointed).

7

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000 ). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

"Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Richter, 131 S. Ct. at 786. "On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Felkner v. Jackson, 562 U.S. ___, ___ (2011) (slip op., at 4) (quoting Renico v. Lett, 559 U.S. ___, ___ (2010) (slip op., at 5).

8

## III.     DISCUSSION

Petitioner asks this Court to determine "whether the state court's finding that trial counsel was not constitutionally ineffective under the Sixth Amendment was itself an unreasonable application of the Strickland standard to the facts at hand." Supp. Br. (dckt. no. 33) at 22-34. In Richter, 131 S. Ct. at 785, the Supreme Court recently stressed that "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standard." "The standards created by Strickland and § 2254(d) are both 'highly deferential' . . . and when the two apply in tandem, review is 'doubly' so." Id. at 788. The Court must ask not "whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Strickland's deferential standard is as follows. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate, first, that his counsel's representation fell below an objective standard of reasonableness, and second, that he was prejudiced by this deficient performance. Strickland, 466 U.S. at 687-89. In reviewing defense counsel's performance, courts "must be highly deferential" and make "every effort . . . to eliminate the distorting effects of hindsight." Id. at 689.

Again, this Court's task under § 2254(d) is not to undertake its own Strickland analysis, but to determine whether the state court's Strickland analysis was unreasonable. "To overcome the limitation imposed by 2254(d)," this Court would have to conclude that whether the state court's conclusion was based on finding either that there was no deficient performance or that there was no prejudice, "both findings would have involved an unreasonable application of clearly established federal law." Premo v. Moore, 562 U.S. ___ (2011) (slip op.) at *7.

Here, the Fifth District Court of Appeal did not address in any depth the issues of whether the hearsay statements should have been objected to and excluded based on evidentiary rules and the trial court's pretrial ruling, whether trial counsel's failure to object on these grounds constituted deficient performance, or whether, but for counsel's

unprofessional errors, the result of the proceeding would have been different. However, the state court ruled that the trial counsel's conduct was not ineffective assistance of counsel. Means, 2007 WL 3408469, at *18. The duty of this Court, under Richter, is to determine whether any "arguments or theories" support that decision. See id. at 786. None do.

### A. The State Court's Finding Was Unreasonable As To Deficient Performance

Any finding by the state court that trial counsel did not perform deficiently would not have been a reasonable application of Strickland. See Richter, 131 S. Ct. at 785.

The relevant testimony by the officers is indisputably hearsay. The officers repeated out-of-court statements made by bystanders about who shot Pearson. See Cal. Evid. Code § 1200 ("'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."). Out-of-court statements are inherently unreliable because "[t]he declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener." See Williamson v. U.S., 512 U.S. 594, 598 (1994). Thus, as every lawyer knows, hearsay is inadmissible unless an exception applies.

No exception applied to the officers' testimony. Although the bystanders' statements to the officers were in all likelihood spontaneous, the trial court could have no assurance that they "purport[ed] to narrate, describe, or explain an act, condition, or event perceived by the declarant." See Cal. Evid. Code § 1240 (emphasis added). See People v. Phillips, 22 Cal.4th 226, 235 (2000) (holding that under Evidence Code section 1240, "a hearsay statement, even if otherwise spontaneous, is admissible only if it relates to an event the declarant perceived personally. Otherwise, the statement would be hearsay on hearsay and admissible only if each layer of hearsay separately met the requirements of an exception to the hearsay rule."). The bystanders could merely have been repeating what other bystanders told them. The statements should not have come into evidence.

Moreover – making this case rather unusual – the trial court had already ruled that the statements should not come into evidence. Specifically, the trial court excluded "any

10

mention of either of these statements that these officers overheard . . . unless and until the court rules that it's otherwise admissible." (RT 75). Having moved unsuccessfully to admit the evidence before trial, it appears that the State then deliberately elicited this inadmissible evidence in a slightly different form. Though the trial court's pretrial ruling pertained to the officers repeating the bystander statements, the officers' testimony about the radio broadcasts was explicitly based on the bystander statements, and so the distinction between the bystander statements and the radio broadcast is insignificant. Indeed, the testimony was perhaps even more damaging in this form: instead of coming from unknown bystanders, it was presented to the jury as having been adopted by the police department.

Given the testimony's clear – in fact, predetermined – inadmissibility, it was wholly unreasonable for trial counsel not to object to it, nor to move to strike it once it came into evidence. The only argument that supports the state court's finding that this was not deficient performance is that it was strategy. "Judicial scrutiny of counsel's performance must be highly deferential," with a strong presumption that actions or omissions "might be considered sound trial strategy." Strickland, 466 U.S. at 689. Courts are to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690

### 1. Trial Strategy

The State offers three possible explanations for why the state court might have found that trial counsel met the Strickland standard despite his failing to object to the incriminating hearsay testimony.

First, the State notes that the police officer testimony mentioned a "possible shooter" and "possible suspect," thus referencing "mere possibilities as opposed to actualities." Supp. Opp. at 15 (citing RT 294; RT 309-10). The State argues that this put "before the jury some doubt as to the shooter's/suspect's identity," especially given the lack of corroborating evidence. Id. at 15-16. Petitioner argues that this cannot be considered a reasonable trial strategy, because there was no downside to keeping the statements out. Supp. Reply at 3-4.

1  He explains: "where the choice is . . . between <u>no bad evidence</u> and pretty bad evidence, any
2  competent defense lawyer would choose to keep all of the pretty bad evidence out." <u>Id.</u>

3      Given that the trial judge had already ruled that this testimony was inadmissible
4  before trial, it was quite likely that counsel's objections to the testimony would have been
5  sustained, keeping the offending evidence from the jury.  It cannot reasonably be considered
6  sound trial strategy to allow the introduction of evidence identifying Petitioner as the
7  "possible" shooter or suspect in the hopes that the "possible" prefix would create sufficient
8  doubt as to the shooter's identity.  This is especially true when there were no admissible
9  statements, other than the victim's second version of events, that identified Petitioner as the
10 shooter.  Accordingly, this theory does not support the state court's presumed finding that
11 trial counsel's failure to object was not deficient performance

12     Second, the State suggests that counsel might have opted not to object because the
13 evidence might have come in anyway: "the prosecution easily could have offered a legitimate
14 <u>non-hearsay purpose</u> for eliciting" the officers' statements, namely as foundation to explain
15 the officers' subsequent conduct in going to Apartment 103 and fingerprinting the brown
16 Delta.  Supp. Opp. at 16.  Petitioner argues that this does not excuse trial counsel's failure to
17 object, because the officers' subsequent conduct did not require any explanation (there was
18 no answer when they knocked on Petitioner's apartment door, and there were no fingerprints
19 found on the Delta), but also because the trial court would probably have nonetheless
20 sustained an objection.  Supp. Reply at 4.

21     Petitioner is correct, of course, that courts often exclude even relevant, admissible
22 evidence if its prejudicial effect substantially outweighs its probative value.  <u>See</u> Fed. R.
23 Evid. 403; Supp. Reply at 4; <u>see also</u> <u>U.S. v. Sallins</u>, 993 F.2d 344, 346 (3d Cir. 1993)
24 (finding that it was reversible error to admit prejudicial hearsay evidence for foundation
25 purposes; recognizing that use of hearsay to do so is an area of "widespread abuse") (citing 2
26 <u>McCormick on Evidence</u> § 249, at 104 (4th ed. 1992)).  The trial judge's pretrial concerns
27 about the prejudicial effect of the hearsay statements, and their exclusion absent some
28 showing that the declarant actually witnessed the crime, supports this view.  Accordingly,

12

1 this theory, too, does not support the state court's presumed finding that trial counsel's failure
2 to object was not deficient performance

3 　　　　Third, the State suggests that trial counsel might not have objected because the
4 officers' attempts to contact the occupants of Apartment 103 and the lack of response they
5 received "actually was <u>helpful to the defense</u>." Supp. Opp. at 16. According to Pearson's
6 second version of the events, Petitioner initiated the argument after saying that his son was
7 having trouble sleeping because of the loud music. (RT 198-99). The unanswered knock
8 might have meant that Petitioner's son was not home or being watched, which was "at odds
9 with" Pearson's statement. Supp. Opp. at 16. But, as Petitioner points out, there are
10 numerous explanations of the unanswered knock that did not conflict with the prosecution's
11 overall theory of guilt: the apartment's occupants might not have heard the knock, wanted to
12 open the door, or trusted the police. <u>See</u> Supp. Reply at 5. Indeed, in light of the State's
13 theory that Petitioner and his wife had fled the scene after the shooting, it was not at all
14 inconsistent with Pearson's version of events that no one remained to answer the door. <u>Id.</u>
15 The unanswered knock might even have led a jury to believe that Petitioner lied when he
16 claimed his son was sleeping. <u>Id.</u> Moreover, had trial counsel's strategy been to allow such
17 testimony in order to undermine Pearson's credibility, presumably he would have made that
18 point in his closing. <u>Id.</u> He didn't.

19 　　　　No fairminded jurist could find that trial counsel would have allowed the introduction
20 of such prejudicial hearsay testimony in the hope of attacking the credibility of the victim.
21 <u>See</u> <u>Richter</u>, 131 S. Ct. at 786. In light of the victim's inconsistent statements about the
22 shooter while at the hospital and later at trial, and the lack of any other eyewitnesses, it
23 would not have been worthwhile to allow such damaging corroborating evidence to come in
24 against Petitioner merely to undermine the victim's testimony on such a small point (whether
25 Petitioner's son was asleep prior to the shooting). Accordingly, this theory also does not
26 support the state court's presumed finding that trial counsel's failure to object was not
27 deficient performance.

28

13

The Court can conceive of no additional arguments or theories that would justify the state court's presumed finding that counsel's failure to object was not deficient. Trial counsel's entire theory of the case was that Petitioner was the wrong man. During his opening argument he stated: "the DA has one witness. And that's the victim. The victim Damon Pearson is the only person that puts a gun in my client's hand. and that – that is suspect too." (RT 5). In his closing argument trial counsel insisted: "Like I said before, there is no corroboration. No witness. Nobody was interviewed that showed my client was the shooter." (RT 453). Even given the wide latitude afforded strategic decisions of counsel, in light of trial counsel's theory of defense, it could not have been "sound trial strategy" to allow corroborating, incriminating testimony to come into evidence, particularly when the trial judge had already excluded the same testimony before the trial.

One of the main duties required of counsel is to "bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." Strickland, 466 U.S. at 688. When, as here, counsel ignores or neglects fundamental and long-standing evidentiary rules prohibiting the introduction of unreliable evidence against the defendant, he fails to act in accordance with this duty. See, e.g., Boyde v. Brown, 404 F.3d 1159, 1179-80 (9th Cir. 2005), amended 421 F.3d 1154 (9th Cir. 2005) ("Boyde's counsel was deficient in failing to object to this harmful evidence . . . , which would probably have been excluded had he done so"); Crotts v. Smith, 73 F.3d 861, 866-67 (9th Cir. 1996) (counsel ineffective for failing to object to prejudicial admission of untruthful statements that defendant had previously killed police officer); Tomlin v. Myers, 30 F.3d 1235, 1237-43 (9th Cir.1994) (counsel deficient where failed to object to admission of witness's previous line-up identification of defendant, where line-up was improperly conducted outside of counsel's presence); Mason v. Scully, 16 F.3d 38, 44 (2d Cir. 1994) (ineffective assistance where counsel failed to object to incriminating testimony subject to exclusion under Bruton v. U.S., 391 U.S. 123, 137 (1968)). Because no arguments or theories justify the state court's presumed finding that trial counsel did not perform deficiently, that finding was an unreasonable application of Strickland. See Richter, 131 S. Ct. at 785.

14

**2.     The State Court's Finding Was Unreasonable As To Prejudice**

Any finding by the state court that trial counsel's deficient performance did not prejudice Petitioner would also not have been a reasonable application of Strickland. See Richter, 131 S. Ct. at 785. The standard for assessing prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In evaluating prejudice, courts are to consider such factors as "the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." Cf. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); see also Eggleston v. U.S., 798 F.2d 374 (9th Cir. 1986) ("ineffective assistance claims . . . must be considered in light of the strength of the governments's case."). Thus, a "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, 466 U.S. at 695-96.

The state court would not have been reasonable to conclude that the case against Petitioner was anything but weak. Although there were 30 to 40 people in the vicinity of the shooting, the only eyewitness who identified Petitioner as the shooter was Pearson, the victim. No other eyewitnesses testified. There was no gun, no evidence of gunshot residue, no fingerprints or DNA, no confession or admissions, and no history of bad blood between Petitioner and Pearson to suggest a plausible motive. In light of the trial judge's previous ruling excluding the hearsay testimony, it is highly likely that had defense counsel objected to the hearsay statements, the judge would have sustained the objection. Absent the hearsay testimony, what the State had, going into trial, was Pearson. And Pearson had a significant credibility problem. Pearson had initially told police that he had intervened in a domestic dispute and was shot by a man he did not know. (RT 363-64). He told police that he did not know the identity of the shooter. (RT 390, 392). But then at trial he testified that Petitioner

had shot him after a fight about loud noise coming from a party. (RT 204, 207-11). This version of events was no more believable that Pearson's first version of events, but the prosecution was able to convince the jury beyond a reasonable doubt of its veracity by introducing the inadmissible hearsay testimony.

The hearsay evidence enabled the prosecution to suggest that there were corroborating eyewitnesses who had told police that Petitioner was the shooter.[2] Thus, the officers' testimony was critical to the State's case, and it was not cumulative as no other eyewitnesses aside from Pearson had identified Petitioner as the shooter. The hearsay testimony was particularly damaging coming from police officers, whom the jury might well be especially inclined to believe.

The prosecution knew how critical it was to corroborate Pearson's identification of Petitioner, because it acknowledged repeatedly in closing that "the argument of identification" was "important" in the case, (RT 432), and that "[i]t's an ID case," (RT 451). The prosecution admitted that Pearson's credibility was key, that his first version of events "was [that] someone else . . . possibly committed these crimes." (RT 433). And then it relied on the hearsay evidence, stating that "the version that [Pearson] gives in which the Defendant shot him . . . is . . . supported by the police officers" (RT 435) and "It's . . . corroborated," (RT 451).

The jury was clearly listening, and weighing the veracity of Pearson's account, as it requested a read-back of Pearson's testimony in the middle of its deliberations. (RT 187).[3]

---

[2] The specificity of the statements were also particularly prejudicial because they directly implicated Petitioner and allowed the prosecution to create inferences of guilt from Petitioner's flight from the scene. See also Supp. Brief at 31-33.

[3] In addition, after deliberations, the clerk of the court found a sheet of word-processed or typed notes in the jury room. The notes stated:

Do we all believe [the victim's] testimony?
    Reasons to believe the testimony
        [Petitioner was leaving the scene]
        He did not return for some time . . .
        FPD officers state that people were pointing toward the apartment (Which officers said this)
        <u>Someone gave the name "Rich" to the police</u>

16

Moreover, those deliberations were somewhat lengthy, spanning from February 27 at 3:25 pm until March 1 at 10:41 am. (RT 138, 188). The jury appeared to struggle to make a decision; this was not an open and shut case.

In support of the state court's presumed finding that Petitioner was not prejudiced by his counsel's deficient performance, the State notes that Petitioner's trial counsel argued consistently that Petitioner was not the shooter. See (RT 404). He brought out evidence of Pearson's earlier version of events. (RT 362-64). He highlighted Pearson's inconsistent statements (RT 454-55, 458-59) and focused on the lack of corroborating eyewitnesses, (RT 453-57, 459). The State concludes: "trial counsel is not incompetent simply because his tactics were unsuccessful." Supp. Br. in Opp'n at 18. True, but neither was his repeated failure to object to the incriminating, already-excluded corroborating testimony cured by his subsequent efforts to exculpate Petitioner. Had trial counsel performed competently and kept the corroborating hearsay evidence out, the jury would have been left to determine Petitioner's guilt based only on the uncorroborated word of the victim, who had given an entirely different version of events to the officers at a time closer to the shooting.[4] In light of trial counsel's deficient performance, the state court could not reasonably have concluded that there was no "reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694. It is not reasonable to conclude that trial counsel's performance did not "undermine confidence in the outcome." See id. The state's holding was therefore an unreasonable application of Strickland. See Richter, 131 S. Ct. at 785.

---

Supplemental Clerk's Transcript on Appeal at 6 (emphasis added); see also Means, 2007 WL 3408469 at *5-6. The notes support Petitioner's argument that the jurors relied on the hearsay testimony in returning their verdict. Though the Court of Appeal ordered the record augmented with the notes, Supplemental Clerk's Transcript on Appeal, Lodged Oct. 7, 2008, and discussed them itself, Means, 2007 WL 3408469 at *5-6, the Court recognizes that California Evidence Code § 1150 provides that "[n]o evidence is admissible to show the effect of such statement . . . upon a juror either in influencing him to assent to or dissent from the verdict." Though § 1150 by its own terms is limited to inquiries "as to the validity of a verdict," the Court's conclusion as to prejudice does not depend on the jury note.

[4] Then, trial counsel's subsequent highlighting of Pearson's inconsistent statements and focus on the lack of corroborating witnesses might have had a chance to be effective.

17

## IV. CONCLUSION

Even under the Court's highly deferential standard of review, it is clear that the state court decision was unreasonable. Trial counsel's failure to object to the introduction of hearsay statements identifying Petitioner as the shooter was objectively unreasonable, and unjustified by any arguments or theories. The statements were hearsay, and had been excluded prior to trial. There were no strategic grounds to allow their introduction. They were also prejudicial, as this was "an ID case" and the only eyewitness implicating Petitioner as the shooter was the victim, who had serious credibility issues. It is difficult for the Court to imagine a more straightforward case of ineffective assistance of counsel. Accordingly, Petitioner is entitled to relief on this claim. The Court therefore GRANTS the petition for writ of habeas corpus. The conviction and sentence of Petitioner are vacated and set aside. The State of California shall determine whether Petitioner is to be retried on these charges within forty-five (45) days of this Order.

**IT IS SO ORDERED.**

Dated: April 5, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE